We'll hear the next case, Langan v. Johnson & Johnson. Good morning, Your Honors. Harold Weinberger for the appellant, Johnson & Johnson Consumer Companies, and if Your Honor, please, I would like to reserve two minutes for rebuttal. And unless Your Honors wish me to address another issue first, I'm going to start with the standing issue, because there are three issues here. The plaintiff doesn't dispute that under Supreme Court jurisprudence, an injury that's sufficient to confer an Article III standing can't be one that she personally didn't suffer, and that's in Lewis v. Case. And she also doesn't dispute that a plaintiff has to demonstrate standing for every claim that she seeks to press, and that is in the Dame LaChrysler case, also in the Supreme Court. She personally suffered no injury under the laws of any state other than Connecticut, and she lacks even an arguable claim under any of the other state laws. She does not claim that she has that. Why isn't this whole question handled under Rule 23 analysis, in terms of whether or not there's a predominance of the issues, the issues are common or not, and the commonality question? And if it's commonality based upon the similarities of state statutes, why wouldn't that be enough? Well, I think because, first of all, I point to Your Honor's opinion in Mann v. Tidecourt Title Company, the issue of standing has to be determined first, and it cannot be determined on a class-wide basis. You have to look at whether the individual plaintiff has standing, and Your Honor's opinion was based on those two Supreme Court cases that I just cited. So I think that's the short answer to your question, and that's the way most of the district courts have confronted it. How is that consistent with our NECA case? I mean, how is it consistent with class actions in the first place, if you interpret it that strictly? I mean, if your client defrauds Judge Walker, I don't have standing to file a lawsuit saying he was hurt. If I was hurt, too, normally I have standing to bring my own claim. But in the class action context, I'm allowed to represent other people who were injured that aren't me. Yes, but they have to be injured in the same way, and they have to have the plaintiff. But aren't they injured in the same way? See, this is where I think NECA comes into play, because there we said, okay, there it's the same statute, but it's different instruments that were purchased by the class members than the ones that the class representative bought. And we said, well, that's not a problem, because so long as they're injured, whatever the formulation is, in a sufficiently similar way or something like that, right? Right. Well, first of all, the NECA case was factually different. It's one factual difference I think Your Honor just pointed out. The other is that the prospectus, the shelf registration and the prospectus contain the same representation. Yes, but that's what the plaintiff here is saying, is that the label contains the same representation. In Oklahoma or Arkansas or New Jersey as it does in Connecticut. But she doesn't have a claim under those statutes, and those statutes do not afford her standing. NECA seems to suggest that if the same set of concerns is implicated, then that's all you need. Even though you don't have a claim, but the other claims raise the same concerns. That's the language from our district. Yes, and I would submit that Daniel Chrysler says that just because the facts, the claims all result from the same nucleus of facts, that does not provide standing for a plaintiff in a class action. I think there's a tension between the NECA opinion and the Mann opinion. And I think that's been recognized actually by some of the district courts that have had to grapple with this. One of them is not cited in our brief. It's a case called In Re Agrinox, and it's 94F sub 3224. And it expressly deals with this conflict between the NECA opinion and the Mann opinion. Ultimately says that the Mann opinion is the one that governs, and it's the exact same issue as we're dealing with here. Because the Mann opinion addresses the Supreme Court's holding that the suit, and I'm going to read from Lewis against Casey, that a suit may be a class action adds nothing to the question of standing. For even named plaintiffs who represent a class must allege that they personally have been injured, not that the injury has been suffered by other identified members of the class. But she has been injured. She's been injured, but she's not, she can't be redressed by those other statutes. So I'm interested, why then did you not, or do you, contend that she also has no standing to represent people who bought the wash product as opposed to the bath product? Why didn't we contend that? Because there is a body of law that directly addresses that issue, and that actually- But why isn't that the same problem? She admits that she has no recollection of ever buying one of the two products, and I take it that the reason that she, there's this body of case law that says that doesn't matter, is the NECA case again. Yeah, well I think that is the NECA case. That is the fact pattern in the NECA case, that she, it's the exact same label on that product. The label says natural oat formula. But conceptually, why is it different that in one case we have the exact same statute, but a different injury, a different product that the fraud is about, and the class representative, having been injured by that misrepresentation, is allowed to represent other plaintiffs injured by the same misrepresentation, but on a different product? If that's okay, how is that different from having exactly the same product, exactly the same misrepresentation, but under a different, but in some cases at least you'll concede, identical statute? There's a different issue as to which states and which problems, and how does that mess up the manageability of the class action? Which is our second argument that I don't think I'm going to have a chance to address. Your Honor, perhaps that argument needs to be addressed as well, but that fact pattern is exactly the same as NECA, where the person is... What's the conceptual difference? You can have some extra time, too. You can have a couple more minutes, both sides. Thank you, Your Honor. What's the conceptual difference is what I'm trying to understand. I hear you, that a different statute is a different thing than a different product, but why? What makes it of Article III significance in one case and not the other? One reason is the redressability requirement. Her claims cannot be redressed under the laws of any of these other statutes, and she has in some of these cases talked about whether a plaintiff has an incentive to prosecute these claims, and she has no incentive to... You don't mean, as far as redressability goes, her claim you're saying couldn't be. If she were to try and bring a suit, she couldn't do it. Correct. But a plaintiff in that state could be redressed. Absolutely, but again... No, I'm sorry. That's all I wanted to be clear on. Yeah, again, Your Honor, I think your own opinion and the Supreme Court opinion makes clear you've got to look at the standing of the plaintiff. You don't look at standing in Gross, and you don't look at the standing of the other unnamed plaintiffs in the class. You have to look first at whether the plaintiff has standing to bring the claim. I think that's what Mann says, and that's what Lewis against Casey says. And if the next argument made after this decision is actually the whole class action mechanism violates Article 3 because Lynch, as named plaintiff, is bringing claims on behalf of everybody else, including Walker, who is, as far as anyone knows, perfectly happy not to bring a suit, I have no standing to bring a claim on behalf of Walker. So why isn't that the same problem? Well, I think, Your Honor, that this actually case presents a slightly different situation than some others because of the Connecticut statute. The Connecticut statute here does not permit non-residents to have a claim. In many of these class actions, the first thing they do, they do a choice of law analysis. I'm not sure I follow. I'm asking, we all live in Connecticut under this hypothetical. Why do I have standing to bring claims just by calling it a class action that are actually Walker's claims or Chin's claims or Weinberger's claims or every consumer in the state's claims? Because it's the same claim. You have standing to bring that claim, and it's the same claim that those plaintiffs, unnamed plaintiffs, have. And that's the analysis. Why doesn't that analysis apply to these facts? It's the same claim, even though it's under a different statute. Because it's under... It's essentially the same claim. Well, because essentially the same claim is, again, I will point to... The same set of concerns. Well, I'll point to the Daimler case, which says the fact that these claims all come from a common nucleus of facts does not provide standing. And I think that's the determinative rule. Suppose every state had... Suppose there was a model code, and the Connecticut CUTPA was the model code, and then every state followed it so that all the states had the similar, exact same statute. I think that would be... That might be a different situation. Well, then... Might be a different situation. Then we're talking about degrees here. Isn't that the U.S. Food Services case, exactly, that it's the uniform commercial code? Yes, that's the U.S. Food Services case, the uniform... But that was not a standing case. I know. There was no... Why don't you... Because no one thought to raise this, apparently. And as I take it... And this does not affect your ability to raise it here, but this claim is a little novel, right? You didn't raise this claim in the district court. We did raise the claim. We absolutely did raise the claim. The claim was not raised initially because we believe that they were making a different argument here. I was starting to explain that. Sometimes in these cases, on the original choice of law analysis, the argument is that there's no difference in the state law, and therefore you can apply the law of Connecticut to all of these plaintiffs. You can't do that here because the CUPTA statute does not permit it. So this is a little bit unique. When we realized, when we made that argument and they came back and said, no, we're not arguing that the law of Connecticut applies to everybody, we did raise the standing argument. But if it were not for that provision in CUPTA, you're saying they would have standing to raise the fairly frivolous argument that they have claims under... that Oklahoma people could bring claims under Connecticut law? No. What I'm saying is if they were able to show that there was no difference in the law of Connecticut between Connecticut and the other jurisdictions, then the choice of law analysis would simply revert to applying Connecticut law to everybody and you wouldn't have this issue. Why don't you take a little bit of time to address the Rule 23 issue? Okay. So I think that issue simply, the burden is clearly on the plaintiff. The court is supposed to do an analysis. We don't believe the court did any analysis at all. What the court essentially did is say, well, the highest court of none of these states requires reliance and, therefore, there's no difference. And that is just not adequate. First of all, it's wrong. I think in our brief we pointed out that Illinois requires reliance, New Jersey and Massachusetts require proximate causation, which is, in effect, the same thing in these cases. But there are a host of other areas which the courts just simply didn't address in which there are significant differences between these statutes. Some of them have safe harbors. Some of them require intent. Some of them award punitive damages. Some of them provide for jury trials. And the plaintiff has offered nothing in the way of a trial plan to alleviate these problems. Well, he said, you know, we'll instruct the jury on Connecticut law and then, if there are any differences, we'll do all the subclass. There's one paragraph in the courts. Some of these issues, it seems to me, would raise, if you're right about the state laws, significant questions about whether the common issues predominate, if, for example, the statute requires reliance. But if a statute is different insofar as it requires intent to deceive, for example, why would that be a big deal? The jury is asked to first decide whether there is a misrepresentation. If there is none, the defendant wins against everybody. Then, if you find that there is a misrepresentation or inaccuracy, then next decide whether it's intentional. And the jury then decides that question. And if it finds intent, then that clicks off another state. And if it doesn't, then the defendant wins under that state's law. Now, I'm not saying that's great or anything. I'm just saying why is that some unimaginably complicated thing to do? Well, I'm not suggesting if that was the only issue that was different that we would be here, but it's not the only one. Well, I understand that. But I guess what I'm concerned about is if we get to this issue, and this is, after all, something that's in the district court's discretion ultimately, are we talking about more than picking off certain states where, for example, a reliance issue strikes me as a fairly clear one, where you would have the kind of problem as in the Nextel case where, you know, for a given jurisdiction, the individual issues would predominate. Are there other things like that, or is it just that there are a lot of states and too many things you'd have to click off in having Siri out of injurians? There are a lot of states and there are a lot of things you have to click off, but some of them have to do, and we've detailed this in our brief and in the appendix. We have a chart with all of them. There are very, very substantial differences on reliance and on proximate causation. There are some states that have safe harbor defenses where you are not liable if you comply with certain regulations, which we claim we did. It becomes an enormously complex exercise, and the fact of the matter is the issue just wasn't analyzed here at all. It was just completely ignored. In fact, the court below cited it. Well, you say that. I mean, we have this very often that judges don't necessarily spell everything out, but it seems a little harsh on the judge to say this issue was totally ignored. Both sides submitted their charts, and the judge came to a certain conclusion. Now, that conclusion may be wrong, but that doesn't mean the judge didn't have evidence before him that he took into account. I grant that. He did cite one case, and the one case, blessing against Sirius, goes the other way and finds some of the very statutes that are involved in this case  Why don't you finish up? Yeah. I'm going to finish up right now. I think on the ascertainability point, the only thing I want to say is that we acknowledge that Petrobras has held that there's no independent requirement, but it's still relevant to the issue of superiority and manageability, and we are not asking the court to impose a career rule. This is a very unique case where there's a cutoff because the label changed, and the memory test that's required of a class member here is not only did I The memory test is when did you have a baby. No. The first memory test is did you use this product or something else. Right. But that would be true in virtually any consumer class action for a relatively inexpensive product. It's not like remembering what kind of car you bought. It's remembering what kind of soap you bought. But once you're past that, the date thing doesn't seem to be that big a deal at all. If I'm buying this product and I say I always bought this product because it was natural, it had natural oats, whatever the heck that's supposed to mean, and that attracted me. So I bought that product always. And I bought it in 2011 because my baby was born in 2011 or whatever the date is. The problem here, if the person said I bought it always, that's a different issue. But the person here has to know that they bought it before November of 2013 as opposed to November of 2012. That end date becomes critical because the label was changed. That's something that's not present in most of these cases. Most of these cases someone has to say I bought it sometime between 2010 and today. But it becomes crucial. You cannot be a class man. There's always a statute of limitations. There's always some kind of cutoff date where the date is going to be relevant. And you say, well, gee, I bought it a while ago. I don't buy it anymore because once I heard that it didn't have natural oats, I stopped buying it. But I bought it sometime. I wonder when that was. That is, again, a fairly common problem. And in this case, it seems to me the fact that it's a baby product puts some constraints on people's memory. Well, I think if you have a baby in November of 2012, you're going to have one in December. And I think that's the basic problem, is that it's very different from other cases. Why don't we move on to the other slide? Thank you, Your Honor. I appreciate the extra time. Good morning. May it please the Court. Mark Kendall from Israel Kendall and Robb. For the plaintiff with me at council table is Nicole Vino, my colleague from the law office of Nicole A. Vino. Why isn't standing the first issue? Yeah. We just decide standing based upon what we've got here and not revert to Rule 23 to resolve this problem. So I think the standing issue. How does a plaintiff in Connecticut have standing to represent plaintiffs in other states? I mean, you know, with different statutes in other states, no suits have been brought by any of these plaintiffs in these other states, right? Correct, Your Honor. So I think that the reason why the plaintiff can bring that suit is really pretty well laid out, as the Court was just discussing in the NECA case. And that is that first off, you look at the Article III issue. Has the plaintiff suffered an injury in fact? Yes. She bought a product. She paid a premium price. She was injured. Was that injury caused by the defendant? Yes. It was the defendant's representation that caused her to pay that premium price. Is this injury redressable by a court of law? Yes. She can recover money damages. She can recover punitive damages. These are quintessential legal remedies that are available in a court of law. So under the Article III analysis, Heidi Langen absolutely has standing to bring a suit. So then the question is, all right, she's got standing. She can properly engage the jurisdiction of the court. Can she bring suit on behalf of a class that isn't identically situated with her? That cannot sue under the Connecticut statute, apparently. They can't sue under the Connecticut statute, but they could sue under their own statutes which are materially the same. Is that the threshold, if they're materially the same, at least as far as the standing point goes? And then somehow it might be sorted out later in the Rule 23 analysis as to whether or not there are differences that make it impossible to have the class? Well, I think that, Your Honor, there are two different ways you could address this. One would be to simply say, look, statutory standing is not a jurisdictional threshold, so that question is one that is properly addressed through the Rule 23 analysis. You could say that. And I think that that would be consistent with NECA, frankly, because NECA really doesn't speak to that issue. The other way that you could address it, which I think is probably more consistent with the spirit of NECA, is to say, well, there does have to be a certain unity of the causes of action here in order to make it sensible for this to be a class. You could do it that way, and that is essentially doing what NECA did in viewing two different products and saying, yes, they are somewhat different, and yes, it is true that the plaintiff in that case couldn't bring suit itself to rectify the wrong on this product that it didn't buy, but the claims are sufficiently similar. They raise sufficiently similar concerns that the plaintiff can, in fact, represent the class, has standing to represent the class for both of those things. And in that sense, the statutory analysis, you could analogize it exactly, which is to say, are the concerns at issue in these other statutes sufficiently similar that it makes sense to allow Heidi Langen, a citizen of the state of Connecticut who made her purchases in Connecticut, to represent this broader class? And the answer there is yes, absolutely. Each one of these states allows plaintiffs who are similarly situated to Heidi Langen to bring a personal action to recover money damages for a misrepresentation on a product and they don't have to prove individual reliance and they don't have to prove that there was some nefarious intent on the part of the defendants. A very similar cause of action, and that's not surprising because this is a little bit like the food services case in that there it was directly based on the UCC. Here, all of these statutes are essentially mini FTC acts that all of these states were passing around about the same time. So it's actually not all that surprising that, by and large, you're going to find a basket of states, and we've assembled them, that have laws that are very similar. So you have, I take it, gone through and analyzed states and there are certain states that you're not going to pursue.  How many states do you include under your umbrella? I believe, Your Honor, it's twelve states in the District of Columbia. Do those states require reliance? They do not, Your Honor. Now, this is the big issue and one that Counsel for the Defendant just addressed as well. Most of the issues that they've raised with respect to differences in the state laws, I think rightly can be described as ones that aren't really going to defeat predominance, as Your Honor was getting to. Because, for example, if you've got an additional factor in a statute that says, well, you have to prove that there was an intent to induce reliance. A couple of statutes do that. Well, that's an additional element that isn't in the Connecticut statute. It isn't in a number of the statutes. Is this something that changes the nature of the case? Well, it's not. Not in the facts of this case because this is a labeling case. And generally speaking, the reason why you put labels on products and you put representations on labels is that you want people to read the representations and decide to buy the product. There's really no other reason to do it. So in the context of this case, that's not going to be a big issue. Mr. Weinberger says, and I think he made this argument under the standing heading, that the class representative has to have an incentive, this is something to do with standing, to bring a suit. I take it that Ms. Langen has no independent incentive to prove intent. It may be that something like intent would be what a jury might think when they hear her evidence, but any lawyer representing a single client would prefer to tell the jury if it came to that, well, they make this whole big show over, they didn't intend to mislead anybody, but that's not a requirement of our statute. The plaintiff still wins if that's not there. So why does Ms. Langen have an incentive, and does it matter if she doesn't, why would she have an incentive to bring up the question of intent in pursuing her own claims in Connecticut? I think it's a fair point, Your Honor, but I think the reality of consumer class actions is that the plaintiff is not going to recover some staggering amount of money here. We're talking about people being willing to bring these cases because they see a wrongness being done that they personally suffered from, they see a practice that they oppose, that they want to stop, and they want that to be as broad as possible. That's what we see. I mean, why does Heidi Langen have an incentive to bring any action, to bring an action on behalf of people in Connecticut? Even on behalf of herself, really, because it's an issue of principle at best, right? Right, and it's an issue of principle that people would like to litigate, frankly, because people are offended by this. Heidi Langen was offended by this. She felt duped, but they can't afford to. The only way that they can afford to bring these lawsuits is through class actions, and quite frankly, when you're dealing with a product that costs a couple of bucks and a premium . . . The district court really only has one paragraph of analysis, and it indeed may have given a great deal of thought to this, but we don't see it. We don't see analysis of the differences and whether they preclude a finding of predominance. Well, I mean, what do we do with that? Well, Your Honor, I think that obviously it would have been an assistance to a reviewing court to have a broader discussion of the differences in state laws. I don't think that it disqualifies Judge Meyer's decision, nor do I think that in any way it undermines his analysis. Both parties did put in extensive evidence. Now . . . I'm sorry. I just didn't hear what you said. I'm sorry. Both parties did put in extensive analyses of the different state laws. Now, most of that was in appendixes, and both parties addressed some provisions in their briefing that were a little bit more important. So, for example, in the plaintiff's briefs, we stressed that each of the state statutes that we were bringing suit under allowed a private right of action, didn't require individual reliance on behalf of absent class members, didn't require nefarious intent, things of that nature, that really created the cohesive claim that everyone was pursuing. The defendants focused on a couple of issues in their brief and left the rest into their appendix, too. Not surprisingly, given how many different issues Judge Meyer was addressing in his opinion, he didn't devote a lot of attention to going through this line by line, given that the parties in their briefs had really been fairly brief and had left the rest to an appendix. I don't think that that's terribly significant. I think that the issues of reliance that we've addressed in the brief here are really the most significant ones, and as you can see reading the briefs of the parties here, of the four states that the defendant says, oh wait, they do require reliance in one form or another, either directly or what we call backdoor reliance through causation, that's not really the case, that we've challenged that, we've briefed that, we've said no, you're misreading the cases, other cases have come out the other way. Judge Meyer was certainly able to read those cases and reach the same decision. I think that it's fair to assume that with the counter-briefing by the parties, he reached the conclusion that we had appropriately proven our case. Can I just ask you, why is it efficient, why is it a better solution than not, to have a class action that spans all of these different jurisdictions, rather than leaving each jurisdiction to deal with its own law in its own place, with plaintiffs from its own jurisdiction? Certainly, I suppose maybe your answer is going to be, well, all we have to decide is whether a class action is better than a lot of individual actions, but don't we have to consider whether this class action is better than other class alternatives? I think the answer, Your Honor, is that if you were to consider that issue, and I think it's a fair one, the answer is absolutely this is better. It's better for a number of reasons. First, it's certainly better to have one case on these facts, which are identical, rather than 17. I accept Attorney Weinberger's correction of my number. It's better to have one rather than 17. You could have inconsistent verdicts. You could have one jury saying . . . They wouldn't be inconsistent necessarily if you got different state laws. Actually, they would be inconsistent, Your Honor, because the state laws with respect to the most relevant points of liability are identical. Why do we care about that, actually? I mean, there are lots of cases where you have somebody suing on some claim, and New York law has decided that they win, and somebody else has what looks like an identical claim in New Jersey, and they bring their suit and they lose. Different trials, different states, different outcomes. Why do we care? Right. I mean, you certainly could, but when you've got an absolute unity of what the facts are, it is just a waste of judicial resources and a waste of the resources of the parties to have 17 trials rather than one. So that's one issue. But the second issue, as a practical matter, is even a class action for a case involving a consumer product that's a couple of bucks with a premium that's less becomes a difficult mechanism, unless you're in New York or California. Or Alaska. There just aren't enough people. There aren't enough people. On a class basis, make it worthwhile to bring. There aren't enough people in Connecticut. If we don't have the ability to join our claims to the claims of other states, consumer class actions like this in Connecticut are not practical. They are not practical. You don't see them being brought. Thank you. We'll hear the rebuttal. Thank you. I'm going to just come back to the standing point and to Dame LaChrysler, where the Court rejected the very argument that's been made here, that standing as to one claim may suffice for all claims arising from the same nucleus of operative fact. In a case called In Re Propranol, antitrust litigation, 249F sub 3rd, 712, decided last year, Judge Rakoff found, and I know it's not binding on you, obviously. I have to worry about Dame LaChrysler. I only have to worry about Judge Rakoff if he gets himself out to the Ninth Circuit again. Yeah. But he basically concluded, and I think the rationale applies here, while it involves state antitrust laws, that while the argument could be made that numerous state law antitrust actions constitute one claim for the purposes of standing, the Supreme Court has explicitly rejected the argument that Federal jurisdiction extends to all claims sufficiently related to a claim within Article III to be part of the same case. And I think that's the governing rule here. I think that's the argument that they're making, and I think it's simply wrong, and it's not consistent with what the Supreme Court has held, and frankly with what this Court has held in the Mayan against Thai Court case. Thank you. Thank you. We'll reserve decision.